You will hear argument next in No. 2010, 1283, American Piledriving v. GEOQUIP. Now, for the advocates, both of you are arguing two cases back-to-back. The Court would propose to you, although we would defer if you feel strongly to the contrary, but we would propose that rather than having us go appellant, appellee, rebuttal in the first case, then appellant, appellee, rebuttal in the second case, that we simply consolidate both cases and hear from the appellant first, potentially for the combined amount of time, and then from the appellee, and then on reply. If that's satisfactory to both of you, it's probably a more efficient way to proceed. CERTAINLY SATISFACTORY. Very good. That's what we'll do then. So we will hear both 2010-1283 and 2010-1314, and we will give you potentially 30 minutes if you need us. HOPEFULLY WE WON'T HAVE TO TAKE 30 MINUTES. Good morning, Your Honors. May it please the Court, Craig Madsen, representing American Piledriving Equipment, Inc., known in the industry as APE. This is one of two appeals, now I'm arguing both, involving the claim scope of U.S. Patent Number 5355964 for a vibratory piledriving extracting device. With this type of piledriver, it's a little bit different than what was used in ancient times where you had a hammer pounding on a nail, so to speak. Vibratory hammers grab the pile and, using vibratory force, shakes it into the ground. These are used for deep foundational structures, bridges, large buildings, etc. The District Court, or both District Courts, incorrectly construed the principle term eccentric weight portion to geometrically require that it be distinct from and extend forward from the cylindrical gear portion of the vibratory device. Neither of these limitations are in the claim language at all. And, frankly, in the claim construction, the word distinct does not appear in either court's construction but does appear in the summary judgments by both of the courts where they said, well, what we really meant was that it's distinct. It is not essential that the eccentric weight portion and the cylindrical gear portion be distinct. What is essential is that all of the eccentric weight is considered as part of the eccentric weight portion. Similar to a recent case by this court, which wasn't in the briefs because it was decided on September 21st after the briefs had been submitted, the Lauren Jill Mask versus Ambu case, 2010-1028 and 1062, the term eccentric weight has a self-describing nature to it. What I would submit is that eccentric weight portion is that portion of the counterweight that contains the eccentric weight. In other words, the unevenly distributed weight of the hammer which creates what's known as eccentric moment, and the eccentric moment determines the amount of vibratory force that this hammer can create. Certainly, the eccentric weight portion should include all of the eccentric weight, whether it's in front of the cylindrical gear portion or a portion of it is behind the front of the cylindrical gear portion. In other words, part of it contained within. Why do you say certainly? That seems to me that it is reasonable to read the patent as distinguishing between the gear portion and the eccentric weight portion. I think, Your Honor, the cylindrical gear portion, by virtue of its very term, cylindrical gear portion, speaks geometrically to cylindrical, that's geometric, and then gear portion, meaning having the gears around the periphery of that portion of the device. The eccentric weight portion speaks to functionally as opposed to geometrically, and we believe and submit that it should include all of the eccentric moment, and there are a number of reasons why. Throughout the patent, the eccentric weight portion is disclosed as positioning the center of gravity of the counterweight. Now, that's important, positioning the center of gravity of the counterweight away from the rotational axis. If the center, in any of these counterweights, the center of gravity of the counterweight itself is determined by all of the eccentric weight, whether it's in front of the gear or part of the gear. Can it be rearward, too? Pardon me? Can it be rearward? It could be rearward. The Virginia court indicated that it could be forward or rearward. That is an instance where you could have the gear in the center and have additional eccentric weight on both sides. Part of the reason why we submit why the patentee uses the functional terminology of eccentric weight portion is so as not to limit it to any particular geometric shape. There are a number of shapes. You see eccentrics that are essentially wedges. Do you view the eccentric weight portion and the cylindrical gear portion as being mutually exclusive? Absolutely not. So the eccentric weight portion, let me put it this way, the cylindrical gear portion, in your view, would be what if you take a look at the figure, what's the best figure Yes, perhaps 3A is probably the best figure. There's no figure that's really perfect for this. Actually, 3B might be a little better to find the cylindrical gear portion. The cylindrical gear portion would be the portion that is geometrically described by the front face, which is 96, the rear face, which is 94. That describes the horizontal extent, and then it has the gear teeth around its periphery, so everything that is between those two faces. Everything that's between the two faces, or everything that's between a vertical line drawn from the edge of the gears down. In other words, there's a bevel in your gear. Are you including, are you looking to the face of the gear and including the bevel within the cylindrical gear? There is a bevel in this preferred embodiment. Right, well let's talk about the bevel. Do you regard the cylindrical gear portion as including the bevel? Absolutely. Okay. In this embodiment. Okay, and the reason for that is that that particular... And presumably in the accused device as well. Well, the accused device doesn't have a bevel. I thought it, I thought... No, what it has, it arguably has a, what the other side calls a recess on the female gear, whereas... That's what I'm talking about, the bevel. The gear does not extend all the way to the face. That is not a bevel. Well, what is it if it's not a bevel? It looks like a bevel. Well, a bevel is angled. Yeah. This is straight down and straight across. Okay. But let me ask you then, what do you regard then as being the gear, cylindrical gear portion of the accused device? Do you include the, call it a ledge as well, or is it some construct consisting of the gear that's below the ledge? I think I understand your question. Given being dealt the claim constructions of the two courts, okay, where they say it has to extend forward. Our position is it doesn't have to extend forward, but... Well, before you get to that, I really want... Yeah. The answer would be the face of the cylindrical portion can be the face that is next to the teeth. And the protruding eccentric feature, which comes off of the, could be extending forward. In other words, the portion of the gear, which is most of the gear body, that goes down from the ledge section on either side, you say is not the face, is not part of the gear portion? It's not part of the cylindrical gear portion. Okay. But if you take that logic to its ultimate conclusion, if you refer back to figure 3B, then why are the two faces of the cylindrical gear, the faces labeled 94 and 96, why aren't the faces two vertical lines, if you will, drawn down from the very top of the beveled gear tooth? In other words, the narrowest part of the gear tooth. You just draw a line down and say, those are the faces, everything else is protruding therefrom. I can't answer that because it's not drawn that way. Could you take that position? But you're arguing the same logic, are you not? Yeah, you could argue that position given the construction that was, the constructions that were given by the district courts. Because, and the reason why, is that the protruding portion, wherever you decide that face is, the protruding portion is eccentric. That's the key here, is that what comes forward of wherever you draw that line is eccentric. There is more weight in this instance on the bottom than there is on the top. But that's true of the rest of the gear as well. That's right. And that is our position, is that the eccentric weight portion and the cylindrical gear portion can have common structure. As a result, the district courts have found that they must be distinct. There's no line saying that it's distinct here. And the only position, the only sentence that was cited by the court to bring this distinct and extending from into the claim language is found in column 5, where it's describing this preferred embodiment. As best, column 5, lines 17 and forward, as best seen in figures 3A and 3B, the gear portion, 41, of the counterweight is substantially cylindrical and has a rear face, 94, a front face, 96, and a plurality of gear teeth, 98, around its perimeter. That defines this particular preferred embodiment. The eccentric weight portion of the counterweight, which is formed integral with the gear portion, it says it's formed integral with the gear portion, extends forward from the front face of the gear portion. The gear portion has a weight distribution with less weight provided by a top portion and more weight provided by a bottom portion. It says right there that the cylindrical gear portion is eccentric. But it does seem to suggest that the discussion about an eccentric portion is something other than the gear portion, because there's a separate discussion about a weight distribution of the gear portion. This court has said on numerous occasions, and frankly in the CEA screenplates case, that frankly involved all of the members of this panel, that different terms mean that they have different meaning, not that they necessarily have to be different structure. In the applied medical resources case, which is cited in the brief, it says the use of two terms in a claim requires that they connote different meanings, not that they refer to different structures. Our point is this, the cylindrical gear portion and the eccentric weight portion are two different elements. They are different elements, but they don't have to be distinct elements. In other words, part of... I think you would agree with me that, well perhaps you wouldn't. I'll ask. The fact that the gear portion is eccentric, has an eccentric distribution of weight, does not necessarily make the gear portion part of the eccentric weight portion. Right? Now say that again, because I don't know... Well, if you could have, certainly, it's not contrary to the rules of grammar, patent drafting or anything else, you could have A, a gear portion, and B, an eccentric weight portion, and the gear portion could have an eccentric weight structure. Right? You could, but I would suspect... And the question is, does this specification describe that array of structures? And Judge Lin's observation was, it does seem that that's what this specification is describing. And the fact that the specification describes a gear structure that is eccentric in its weight distribution, is not an aha moment for your side, it seems to me. No, no, I think... Let me go more to the physics of it, because I think there is a particular part in the specification that might clarify that issue. Throughout the specification, it talks about the center of gravity of the counterweight. Okay? The center of gravity of the counterweight is determined by all of the eccentric weight. Agreed? Sure. So, when it talks about how you balance the weight so that you can cut the teeth, okay, it talks about, at column 8, beginning at line 29 through 32... Well, actually 28. The rack allows the counterweight to freely rotate until gravity pulls the eccentric weight portion to the lowest point. Okay? Gravity pulls the eccentric weight portion to the lowest point. Thus, the center of gravity of the counterweight and insert assembly is closest to the ground and in equilibrium position. When the eccentric weight, all of the eccentric... When the eccentric weight portion is at its lowest point, the center of gravity of the counterweight and insert assembly is at the closest point to the ground and equilibrium position. That can only happen if all of the eccentric weight is considered with regard to the center of gravity of the counterweight. But the center of gravity of the counterweight is always going to be in equilibrium when the center of gravity is low, right? Not necessarily, because in your hypothetical, if the cylindrical gear portion is somehow askew from the eccentric weight portion, it may take it on a different line. And in fact, that's what it talks about when you first balance it, okay, you get it to an equilibrium position and then you cut the teeth. By cutting the teeth, you may somehow move that center of gravity. Not if the teeth are cut equally all the way around here. Well, presumably, if you can do it perfectly, then you won't have a problem. But this describes the situation, once you cut the teeth, then if you do not have the equilibrium situation that you tried to get, it says that you remove weight from the eccentric weight portion until you do get it. But will that cause the eccentric weight portion to, in an equilibrium position, to be pulled down by gravity? To its lowest point. To its lowest point. Yes. So even if the gears are not cut equally? Well, if the gears are not cut equally, what you're doing is you're creating a new center of gravity for the counterweight. Well, as long as the gear, it would seem to me, as long as the allocation of weight in the gear portion is symmetrical to the allocation of weight in the, what the other side would call the eccentric weight portion, I don't see why the equilibrium point would be changed at all. Well, it would change horizontally. I mean, potentially horizontally. It could be at the same point, but it could change. When you say horizontally, if this is the face of the gear, and the gear is loaded down here, and the eccentric weight portion is also loaded down here in a way that puts it exactly on the same plane with the extra weight in the gear, then it seems to me they both act simply to bring the thing to equilibrium at this point. When you say horizontally, do you mean in this direction? Well, the center of gravity is a position for the entire counterweight. I understand. Okay? So, let's say this isn't loaded, and you put it on. The center of gravity is going to be pulled this direction. Right. The direction of the shaft, the rotating shaft. Okay. So, all I'm saying is, if you load it, you will move it forward or backward in the context of the shaft. Mr. Manson, the part of the specification we were looking at a minute ago, column 5, starting at line 17, I guess. If you read down past the portions that you read, it's talking about the eccentric weight portion 43 of the counterweight 40, which is formed integral with the gear portion 41, extends forward from the front face 96 of the gear portion. So, at that point, the eccentric weight portion is just that portion that extends forward from the front face 96. I'm sorry, I've lost where you're at. So, column 5, starting at line 40. Okay. All right? So, we're talking about the eccentric weight portion of the counterweight 40, which is formed integral with the gear portion 41, extends forward from the front face 96 of the gear portion. So, at that point, the eccentric weight portion is not part of the gear portion. Right? It extends forward. It extends forward from, perhaps a better terminology would have been extends beyond, but it doesn't negate the fact that it could be also in the cylindrical gear and extends forward from. Let's continue on a little bit. The next sentence, the gear portion 41 has a weight distribution with less weight provided by a top portion, more weight provided by a bottom portion. As a result of the eccentric weight portion 43 being connected there too. So, again, the weight distribution is as a result of that eccentric weight portion, which the previous sentence says extends from the face. Now, we were talking earlier about the fact that the gear itself could have an eccentric distribution. Distribution, but that doesn't come into play until the bottom of column 5, starting line 51. And that paragraph talks about the apertures 110 that are drilled in the top of the gear portion so that the gear has an unbalanced weight distribution. Correct. And it refers to that as just adding to the dynamic forces on rotation. But there's no discussion in that paragraph of the fact that as a result of the apertures 110, the gear itself may be a part of the eccentric weight portion. And it seems to me that all of these discussions I've been going through are consistent with the notion that independent of whatever distribution there may be in the gear portion, the eccentric weight portion is something different. That is one interpretation. And that's the interpretation that is important. I think there are a number of reasons. Number one, in order to, first of all, the claim language does not say that. Okay? The claim language merely says that the counterweight has a cylindrical gear portion and an eccentric weight portion integral with the cylindrical gear portion. That's first. Secondly, both courts did not find a... Or connected to in the case of claim 16. And connected to in the case of 16. Which gets, interestingly, to where the courts decided that that connected to meant that it contemplated a two-piece device. But the second thing is that in order to read distinct and extending from into the claim, there must be either one, a redefining of the term specifically, which neither court found. Or there must be a manifest exclusion or restriction that represents a clear disavowal of the eccentric weight being something other than all of the eccentric weight. Okay? Now, in this context, there are several places in the patent that talk about the eccentric weight portion positions the center of gravity of the counterweight. The eccentric weight portion positioning the center of gravity of the counterweight is all of the eccentric weight determines that center of gravity. It can be found... Well, let me first go to column 3, lines 46 to 51, where it talks about the eccentric weight portion has dense solid metal inserts mounted therein to increase the mass of the eccentric weight portion and to position the center of gravity of the counterweight radially outward from the rotational axis. Okay? It's talking about the eccentric weight with the inserts positioning the center of gravity of the counterweight. Not just the eccentric weight portion, but the entire counterweight. Okay? I don't see how that gets you anywhere. That just says that if you put a big chunk of heavy metal on one side of the gear, it's going to move the center of gravity of the entire contraption out into the realm of the eccentric weight portion. That doesn't seem to me to help you. Maybe you have a... Well, the context here is also that this is talking about the general nature of the vibratory hammer that's being claimed. Then farther down in that same column, beginning at line 66, the drive motors rotate the counterweights at high speeds about its rotational axis, whereby the eccentric weight portions of the two counterweights generate large vertical vibratory forces. It's talking about the vertical forces that are created by the counterweights being created by the eccentric weight portions. Now your time, even doubling your time, extending, is almost expired. Do you have a final thought for us? Principally, the final thought, I guess, would be that claim laying of two different terms describe different elements, not distinct elements. We will give you a couple of minutes for rebuttal. Even though your time has expired, we'll add a couple of minutes for rebuttal. We'll hear now from Mr. Knox in both cases. Good morning and good afternoon, Your Honor. Pleased to report. The judgments for the District Courts of the Northern District of California and the Eastern District of Virginia should be affirmed. I have four main points on that, and I'll first hit the claim construction. District Courts correctly outlined and then properly applied this Court's precedent in Phillips to arrive at the ordinary and customary meaning of each of the two. Mr. Knox, I don't want to interrupt, so I'll just jump in right at the beginning. It doesn't matter whether you do it now or at some point in your argument, but I want to hear your argument as to the application of Claim 16 to the early NPSI Model 500, which came up in the Bay case, I believe, the California case, correct? That is correct. All right. So you can address it now or you can take it in the ordinary course. I will jump to it now if you would like to discuss that. Yes. The California court looked to Claim 16 and decided first they went through the claim differentiation, and they said that Claim 19 requires integral. Claim 16 connected to must have something broader than integral. The court in California found that it could mean joined, united, or linked is what connected to meant. As it applies to the early Model 500, the court found, one, in California, that the insert receiving areas extends fully through both the eccentric weight portion, which she did find to be the portion extending forward from the front face of the gear portion, and through the gear portion where the insert that has the higher melting temperature and greater density extends into this eccentric weight portion. And as far as I can see, the limitation read, well, I won't say read into the claim, but what the California court understood to be entailed by the insert receiving area is predicated on Column 5, Lines 60 through 65. The bottom portion of the counterweight is cast having insert receiving areas, dot, dot, dot, extending fully through the gear portion and fully through the eccentric weight portion 43. That is correct. And that was all that I could see that the district court relied on as a basis for that construction of the insert receiving areas was that portion of the specification. Is that also correct? That is correct, except for her to point out that that was a description of the embodiment as a whole. Well, that's the question. I mean, she seemed to view that as a description of the invention as opposed to a preferred embodiment of the invention. And this comes in a passage, and this is my question to you really, in which there are several references to preferred embodiment. And I would like you to explain why it is that this is not simply limited to a preferred embodiment disclosed in the figure. I think the court didn't lay it out specifically, so I'm to some extent surmising about her arriving at that conclusion that that portion wasn't in the preferred embodiment. But when the transition occurs in this specification between the description of an embodiment as a whole to the preferred embodiment, in many instances throughout the patent, they say in the preferred embodiment, we have X, Y, Z. In this case, it wasn't started with the header in the preferred embodiment. The insert receiving area extends fully through the eccentric weight portion and fully through the gear portion. Now, this is not what the district courts say. I would say there's another distinction that we could apply to the early Model 500, and that is that when the patentee was prosecuting this case in the reexamination to get around Hornstein, the examiner had rejected the pending claims, all of them except for the method claims, including the connected to claims based on Hornstein, which was discussed in the briefs. The patentee, in response to this rejection, made the distinction that the invention, he'll use the term integral, but that the invention as a whole has an eccentric weight portion and a cylindrical gear portion, and that they are integral, i.e., they are components of a one-piece. Let's see if I can get to here. They're simply components of a one-piece counterweight. And then a little bit later, this requirement of integral, i.e., one piece, nature of the eccentric weight is not disclosed by Hornstein, the prior art that the examiner relied on. Further. So are you arguing then that, in effect, the patentee has disclaimed Claim 16 as to the extent that it's distinguished from the integral claims 1, 6, and 11? Not as distinguished by 1, 6. In 1, 6, and 11, absolutely. Well, 16 has connected. That's correct. 1, 6, and 11 have integral. Correct. So what 16 contributes is the distinction between integral and connected, which, at least without more, would suggest that, for example, 16 would read on something that's bolted. That's correct. Right. And you're saying, if I understand your argument, that they gave up Claim 16, in effect, by saying integral is a necessary component of our invention. That is correct. And I just want to put it in perspective that, yes, as long as 1, 6, and 11, the term integral is held to mean one piece, then, yes, in 16, what they gave up, disclaimed, was a multi-piece counterweight construction for connected to. So connected to could still be one piece. I mean, I think that fits within the— You're saying connected to has to mean integral? In that case, based on their disclaimer, based on the disclaimer that they did, yes. Not in the ordinary course, not in the course of, without that statement, without having to get around Hornstein and making that admission in order to get the patent and to let the people in the public know what they gave up to get around Hornstein, it would have been able to have two pieces, more than one piece. But, yes, I am saying that. But if you're saying, then, that integral eliminates the earlier claims, aren't you also saying that integral could not mean connected to if it's a one-piece aspect of it? Yes. So that connected to could mean more than one piece. Yes, I agree with what you're saying. Connected to means one or more pieces. Integral means one piece, as they've used it in this patent, and they've— Because of Hornstein. Because of their argument to avoid Hornstein. Yes, and other statements in the patent. In the prosecution or in the patent? In the patent itself. When they—we can go to that when they talk about— When they talked of one piece, I thought they were referring only to a preferred embodiment at that point. Are you speaking of in the patent? In the patent. Well, I disagree with that to some extent because I think that you can see in the background of the invention, the first use of the term integral. They talk about their first embodiment, which is a two-piece construction, an eccentric weight. It isn't called an eccentric in the patent. It's called an eccentric weight and a gear that is bolted together. That is the first embodiment they talk about in the prior art. Use—integral is not used in that term. Second embodiment they talk about in the prior art, in the background discussing the prior art, is a solid—no bores, no added weight—a solid eccentric weight portion now that is cast with a cylindrical gear portion. And in that instance, they say that is integral with the cylindrical gear portion. So here you have a one piece and, in that case, integral, which gives you the first indication that integral means one piece as connoted in this patent. It may not be true for other patents as the examiner or other applications, but it is true for this case. But aren't you doing backing up into infringement of Claim 16 if you're saying that there is a difference between integral and connected to? I would be if there hadn't been a disclaimer of the multi-piece. Where is your argument about the disclaimer? I'm looking through your brief and I can't find that argument. In the brief, it is discussed—the particular disclaimer is discussed both when we're talking about integral, that there was a disclaimer that was found. Where in the brief is that? Because I want to take a look at that argument. I apologize. The brief comes up in two places, both in the infringement aspect. If you go to our brief, we go to page 29 of our brief, is where the section starts, and then we talk a little bit about the statements by the patentee on page 30. Okay, now there what you're saying is integral means formed or cast of one piece. Correct. But what I understood you to be saying with respect to Claim 16 is that the patentee gave up structure which is connected but not integral. Correct. What I'm looking for is where is that? That discussion was addressed in a footnote and not specifically, I believe, under the infringement theory. Page 39? Yes. That's right. But that's simply a reference to the district court's conclusion. That's correct. But where is the argument? There's not a specific argument that was provided about giving up when it comes to connected to. If you haven't made the argument in your brief, you can't make it for the first time here. So I think you're stuck with the argument that the description at column 5 is a description of the invention as opposed to just the preferred embodiment. Really? Wouldn't you agree? In California, that's correct. In the California case. That's all we're talking about here because we're just talking about one device. By the way, how much of the case turns on this early 500 model? Is this an insignificant part of the case or a significant part of the case? How many counterweights compared to the later counterweights. I'm going a little bit off the top of my head. I believe there's one or maybe a very few in California that are the early model. One, maybe two. And there's more significant of the later model. That was done in 1998. And the one or two that might have been made during that time, I believe there was one in California, was used within the six-year going back period. But more significant is the later models. Okay. Going back to the eccentric weight portion or the claim construction, I believe that both district courts followed Phillips in basically stating that, no, this is not a self-describing term, as the appellants are now alleging, or that there had to be an intent to deviate. The district courts went and defined the term eccentric weight portion following what Phillips said to do, which was first to look at the claim language, then look to the specification, and then to the prosecution to arrive at a proper construction for the claim. They did so for eccentric weight portion. And as we discussed before, as the appellant was arguing, the specification makes it very clear that the eccentric weight portion extends forward from the front face of the cylindrical gear portion. The appellants have stipulated to the meaning of a cylindrical gear portion as having a front face, a rear face, and a plurality of gear teeth around its perimeter, which, if I can jump a little bit, kind of negates the argument that the gear teeth that face right at the gear teeth is where the face of the gear is and not that little .031 inch extension or ridge as it goes down because it's around its perimeter, the stipulated definition, and that seems to say the middle portion's perimeter, the middle portion being the cylindrical gear portion. The district courts did the same for the term integral as well as insert receiving means and following the dictates of Phillips or at least the guidelines of Phillips to arrive at these claim constructions. I take it that this matters because you put tungsten in the gear and lead in the eccentric weight, accepting that those are two distinct structures, at least for purposes of argument, right? That is exactly correct. The tungsten, in light of the patent, tungsten was placed in the gear portion for the later models, just to be absolute. But not for the early 500. That's why we have an issue with respect to the early 500. And for the early models, the only distinction, other distinction, well, it's a slight distinction, is the number of tungsten rods in the eccentric weight portion or the eccentric, if we want to somehow keep that terminology, and the cylindrical gear portion differ so that the bore doesn't extend all the way through. Finally, just on the infringement. First, as found by the district courts, that neither infringe because they don't have the eccentric weight portion and really the insert receiving area in the eccentric weight portion is required by the patent because there is no tungsten that extends into the eccentric weight portion other than the early model. And two, that it is integral, that it's not integral, that we have a two-piece bolted construction that is not contemplated by at least claims 1, 6, and 11. And claim 16, the connected-to language, doesn't have the insert receiving means as found by the California court. Finally, to... Once bolted, though, isn't it one piece at that point in time? It will function as a piece. Yes, this is not going to fall off, but as the appellants or as the patentee stated in the background, and this was at the time of the invention, so it's pretty telling on how they understood the term to mean, that construction was bolted to, and that wasn't deemed to be integral.  And that's really the gist of the patent, as it's described in total as a cast counterweight that has bores with tungsten in there. Would the system work as effectively when it's a two-piece system bolted together versus a one-piece cast because of the potential shearing of the bolts during the... Well, this is the potential breaking problem that the patentee identified in the background of the invention, and the patentee found no way to, or at least did not disclose any way to overcome that in the patent. So, yes, the two-piece might be more difficult to make or might have had some other engineering aspects to it to enable it to be held together in such a way that it can function as a one-piece. But you're not suggesting that there's been a disavowal of all bolted systems, right? We argue that in the district court. But you're not arguing that. We're not arguing that here, no. But certainly, yes, that is why I would say that although it functions as one piece and at times the term integral can encompass a one-piece system, it doesn't in this application or this patent based on what it says in the patent and what it says in the prosecution history. Now, let's see if there are any further questions. Thank you, Mr. Nutz. Mr. Madsen, you have a couple of minutes of rebuttal. Just a couple of things. With regard to the integral argument in the prosecution history, first of all, the examiner himself in reexamination said nothing in the specification of the subject patent states that integral means one piece. And, frankly, we can't see it either. Opposing counsel here made reference to a sentence in column one. I don't believe that sentence says that at line 45 through 48, another prior art vibratory assembly avoids this breaking problem by using a cast one-piece solid counterweight. Having an eccentric weight portion integral with the cylindrical gear portion means that integral is one piece. It just happens to be that a one-piece unit can have an integral cylindrical gear portion or eccentric weight portion with gear portion. But wasn't that your argument in order to overcome the Holstein? The argument to overcome Hornstein was not that integral means one piece. The argument to overcome Hornstein was that Hornstein, if you'll recall, is a gear that is totally balanced. It had no eccentric weight at all. And you put weights into cavities within Hornstein. The argument was that the eccentric weight portion and the insert could not be the same thing. In other words, Hornstein did not have an eccentric weight portion. Frankly, we weren't arguing that the counterweight wasn't integral because Hornstein is a one-piece unit other than the inserts. So the argument there was, with Hornstein being balanced, before you inserted, and it was a variable vibratory device where you could put the weights at different places and get vibration other than vertically, etc. The notion there was, when you put in an insert, it's either an insert or it's an eccentric weight portion, but it can't be both. And there was no insert in the insert as required by the patent. Thank you. I thank both counsel. The case is submitted.